UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TINA GRAY for TG                          CIVIL ACTION NO. 6:10-cv-01174
SSN: XXX-XX-7816

VERSUS                                    JUDGE HAIK

MICHAEL J. ASTRUE,                        MAGISTRATE JUDGE HANNA
COMMISSIONER OF SOCIAL
SECURITY

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed.

### BACKGROUND AND THE COMMISSIONER'S FINDINGS

On April 3, 2008, the claimant, Tina Gray applied for Supplemental Security

Income benefits on behalf of the minor child T.G., claiming the child became

disabled on January 1, 2008, due to a congenital cataract condition in her right eye

and asthma. [Rec. Doc. 7; Tr. 94][1][2]

---

[1]On February 23, 2011, the Administrative Transcript was filed into the record. [Rec. Doc. 7] Transcript pages are numbered at the bottom right corner of each page and will be referenced herein accordingly as Tr. __.

[2]A previous application for benefits was denied in January, 2002. [ Tr. 91]

T. G. was born on April 2, 1997, and she is currently a student in the Iberia Parish School System, enrolled in regular classes. [Rec. Doc. 12, p. 2; Tr. 23] At the time of the hearing, she was twelve years old and a regular education sixth grade student in New Iberia, Louisiana.  As a result of a congenital cataract condition, at an early age  T.G. lost vision in her right eye, which was later surgically removed with placement of a prosthesis shell. [Tr. 25-26] Medical records indicate that the child had several surgeries to her right eye leading up to removal. [Tr. 173]  T. G. has myopia/astigmatism in her left eye, which is corrected with eyeglasses. [Tr. 81] She also has a history of asthma, currently controlled without medication. [Tr. 26] She takes no prescribed medications, except for use of eye drops to keep her right eye socket clean. [Tr. 25, 96] She participates in regular physical education classes at her school, including kickball. [Tr. 25-27] She sits at the front of her classroom to see the blackboard. [Tr. 28]

On June 16, 2008, the claim at issue was denied. [Tr. 36] The claimant requested a hearing on July 25, 2008[Tr. 41], and a hearing was conducted by the Honorable Michael Wahlder on June 29, 2009, at which hearing testimony was taken from the claimant and her daughter. [Tr. 22-34]  Claimant was represented by counsel.

On October 15, 2009, ALJ Wahlder issued a  Decision, finding that the claimant child is not disabled under section 1614(a)(3)(C) of the Social Security Act. [Tr. 8-19] A request was made for review by the Appeals Council on October 15, 2009, which was denied. [Tr.1-3] Accordingly, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. 42 U.S.C. § 405(g). This action followed on July 20, 2010.


## ASSIGNMENT OF ERRORS

Tina Gray claims that the minor child T.G. is totally and permanently disabled according to the guidelines of the Social Security Administration regulations. [Rec. Doc. 1] The claimant  asserts that the Administrative Law Judge's decision is not supported by substantial evidence. [Rec. Doc. 12, p. 2] Per the claimant, the ALJ did not seek objective testing or other evidence to determine the limitations in the areas of T.G.'s abilities to move about, relate to others, manipulate objects and care for herself. [Rec. Doc. 12, p.  5] Claimant also argues that a psychological examination should have been performed to determine what effect monocular vision would have on T.G. [Rec. Doc. 12, p.  5]  According to the claimant, "[ T]he correct question was not whether the blindness could be established, but reather[sp] whether the effects of

the blindness had lasting effect on this child.  Without additional testing, this could not be established." [Rec. Doc. 12, p.  6]

### STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[3]  If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[4]  Substantial evidence is more than a mere scintilla and less than a preponderance.[5]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[6]  Finding substantial evidence  requires scrutiny of the entire record as a whole.[7]  In applying this standard, the court may not re-weigh the evidence, try the issues *de novo*,  or substitute its judgment for that of the Commissioner.[8]  To determine whether the decision to deny social security

---

[3]     *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[4]     *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[5]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[6]     *Boyd v. Apfel,* 239 F.3d at 704.

[7]     *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[8]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

benefits is supported by substantial evidence, the court weighs the following factors:
(1) objective medical facts; (2) diagnoses and opinions from treating and examining
physicians; (3) plaintiff's subjective evidence of pain and disability, and any
corroboratin by family and neighbors; and (4) plaintiff's age, educational background
and work history.[9] In short, "conflicts in the evidence are for the Commissioner and
not the courts to resolve."[10]

<u>APPLICABLE LEGAL STANDARDS</u>

A claimant seeking Social Security benefits bears the burden of proving that
he or she is disabled.[11]  Disability is defined in the Social Security regulations as the
"inability to engage in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to result in death
or which has lasted or can be expected to last for a continuous period of not less than
12 months."[12]  Substantial gainful activity is defined as work activity involving
significant physical or mental abilities for pay or profit.[13]

---

[9]     42 U.S.C.A. §405; *Martinez v. Chater*, 64 F.3d 172, 174(5th Cir. 1995).

[10]    *Masterson v. Barnhart*, 309 F.3d 267, 272(5th Cir. 2002).

[11]    *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954
F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*,
810 F.2d 1296, 1301 (5th Cir. 1987).

[12]    42 U.S.C. § 423(d)(1)(A).

[13]    20 C.F.R. § 404.1572(a)-(b).

*Availability of Childhood Disability Benefits*

Supplemental security income(SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., are available to aged, blind and disabled individuals, including minors who are disabled. See 42 U.S.C. §§ 1382, 1382c. Under the provisions of the Social Security Act, a child under the age of 18 is considered to be "disabled" for SSI if she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §1382c(a)(3)(C).

In determining whether a child is disabled and eligible for SSI benefits under the meaning of the Social Security Act, the Commissioner utilizes a sequential three-step inquiry[14]:

1.  A determination must be made whether the claimant is engaging in substantial gainful activity[SGA]. If the claimant is engaged in SGA, she is not disabled regardless of her medical condition, age, education, or work experience.[15] If the individual is not engaging in SGA, the analysis proceeds to the second step.

---

[14]    20 C.F.R. § 416.924(a).

[15]    20 C.F.R. § 416.924(b).

2.    A determination must be made whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe."[16]  A medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations.[17]   If the claimant does  not have a severe medically determinable impairment or combination of impairments, she is not disabled.  If she has a severe impairment(s), the analysis proceeds to the third step.

3.    A determination whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listed impairment, or that functionally equals the listings, considering the combined effect of all medically determinable impairments, even those that are not severe.[18]  If the claimant has an impairment or combination of impairments that meets, medically equals or functionally equals the listings, and it has lasted or is expected to last for a continuous period

---

[16]    20 C.F.R. § 416.924(c).

[17]    20 C.F.R. § 416.924(c).

[18]    20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.924(d), and 416.926a(a) and (c).

of at least 12 months, she is presumed to be disabled.  If not, the claimant is not disabled.[19]

To make the requisite determinations at Step 3, the claimant's functioning must be assessed in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being.[20]  The assessment considers a comparison of how appropriately, effectively and independently the claimant child performs activities compared to the performance of other children of the same age who do not have impairments.  To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.[21]  A marked limitation is present where the impairment interferes seriously with one's ability to "independently initiate, sustain, or complete activities."[22]  An extreme limitation is present where one's impairment "interferes

---

[19]     20 C.F.R. § 416.924(d).

[20]     20 C.F.R. § 416.926a(b)(1).

[21]     20 C.F.R. § 416.926a(b)(1), 416.926a(d).

[22]     20 C.F.R. § 416.926a(e)(2)(i).

very seriously with [one's] ability to independently initiate, sustain, or complete activities."[23]

## Analysis and Discussion

*The Administrative Record:*

T. G.'s mother completed the Function Report on her child on April 15, 2008. [Tr. 78-89]  According to her mother's report, T.G. has problems seeing; she uses glasses, and she "has to get close to things to see them." [Tr. 81] There is no pain associated with her monocular vision[Tr. 94]; she has no limitation in her ability to communicate or her ability to learn, and there are likewise no limitations on her physical abilities. [Tr. 83-85] She has friends her own age, and she generally gets along with her mother and teachers. [Tr. 86] Her vision issues do not affect her ability to take care of her personal needs. [Tr. 87] On appeal, the claimant completed Disability Report, Form SSA-3441 and indicated that T.G. is "[A]lways squeezing her eyes to see far and if she's looking at something long.  Always tripping over things a lot on her right side, cause she can not see in that eye." [Tr. 106] She also noted "build up and slime" coming out of T.G.'s right eye after sleep. [Tr. 106]

T. G. is monitored by her doctors every six months. [Tr. 29] The record contains medical records for T.G. from LaHaye Center for Eye Care, where she was

---

[23]     20 C.F.R. § 416.926a(e)(3)(I).

examined regularly from July 26,2005 through October 13, 2008. [Tr. 123-135, 193-211], Dr. Walter Scott III(The Children's Center), who saw T.G. from June 2, 2007 through May 8, 2008 [Tr. 136-149, 176-192], Dr. Richard Abda who provided a prosthesis for T.G. and monitored her condition from August 29, 2007 through March 31, 2009[Tr. 150-153, 160-167], and Dr.Thomas Curry who examined T.G. during her early childhood from October, 31, 2000 through March 26, 2003. [Tr. 168-175]. The record also contains the report of  Dr. Robert Casanova who performed an eye examination and drafted an Eye Examination Report at the request of the ALJ on July 27, 2009. [Tr. 212-214]  In all Periodic Screening forms contained in her medical records, T.G. is noted to have normal verbal communication, relationships, and school performance. [Tr. 178, 192] Her vision examinations, including the most recent by Dr. Robert Casanova on July 27, 2009, consistently show corrected vision of 20/20 in her left eye with a stable prognosis. [Tr. 124, 126, 128, 157, 159, 194, 198, 200, 213]

The record also contains a Childhood Disability Evaluation Form, completed by consultants Drs. Henry Simon and James Murtagh in June, 2008, which form addresses the required assessment of functional equivalence. [Tr. 154-159] In considering the six domain evaluations, the consultants found no limitations in any domain. In the disposition section of the form, completed last after other parts of the

form are complete, the consultants found that T.G.'s medically determinable impairment or combination of impairments result in no more than minimal functional limitations. [Tr. 154] At Domain 6(Health and Physical Well-Being), the report notes "Lost right eye from congenital cataract.  Has corrected vision to 20/20 with myopic correction in otherwise normal left eye.  NO MER IN VISITS IN LAS 12 MONTHS." [Tr. 157] The report further notes evidence from medical records of T.G.'s history of asthma, without any indication of hospital admits due to asthma attacks and no indication that T.G. is on asthma medications. [Tr. 159]

*The Administrative Hearing:*

At the administrative hearing on June 29, 2009, all medical records and other documents were received into evidence without objection. [Tr. 23] T.G. testified, giving information about her age, grade level, grades, and her status as a regular education student. [Tr. 23-24] She indicated she had no friends. [Tr. 24] She described her participation in kickball during physical education classes. [Tr. 24] She confirmed, along with her mother, that she takes no medications. [Tr. 24-25] The claimant Tina Gray testified to indicate that T.G. has been blind in her right eye since birth from cataracts, resulting in surgical removal of T.G.'s right eye. [Tr. 25-26] She confirmed that T.G.'s asthma condition is under control, and she referenced T.G.'s allergy to grass. [Tr. 26-27] When questioned by her attorney, the mother added that

T.G. is not sure of her balance, and she believes that is the reason the child does not play outdoors with other children. [Tr. 27-28] She commented regarding T.G.'s poor handwriting, and she also testified regarding T.G.'s school seating placement near the blackboard.  She identified her child's doctors and their treatment of T.G., and she described the medical prescripton/management of the child's prosthesis. [Tr. 29-30] The only precautions offered by T.G.'s physicians, according to the mother, are provision of a protective lens in T.G.'s eyeglasses, designed to protect her left eye. [Tr. 28, 30-31]

At the hearing, the ALJ informed the claimant that he would arrange for an appointment with an ophthalmologist for an independent evaluation.  There was no objection. [Tr. 33] That evaluation was performed by Dr. Robert Casanova on July 27, 2009. [Tr. 212-214]

*The ALJ Determination:*

In his ruling, the ALJ followed the required three-step sequential process for determining whether T.G. is disabled, at set out above.  The ALJ found, at step one, that T. G. has not engaged in substantial gainful activity since April 3, 2008, the date on which she applied for SSI. [Tr. 11] This finding is supported by the record, which

contains no evidence that T.G. has engaged in such activity for pay or profit[24] at any relevant time.

At step two, the ALJ found that T. G. has the severe impairments of asthma-stable, congenital cataract with loss of vision right eye, and myopia/astigmatism left eye, which impairments cause more than minimal limitation in T.G.'s functioning. [Tr. 11] This too is supported by evidence in the record, which establishes that T.G. has a medical history of asthma, which is now controlled and stable, surgical removal of her right eye as a result of congenital cataract blindness, and current diagnoses of myopia/astigmatism in the left eye, treated with corrective eyeglasses.  The ALJ did not err in finding these impairments to be severe.

At step three, the ALJ found that T. G. does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. §416.925 and 416.926). [Tr. 11]  The ALJ further found that T. G. does not have an impairment or combination of impairments that functionally equals the listings(20 C.F.R. §924(d) and 416.926(a)). [Tr. 11] In making those findings, the ALJ considered the six functional equivalence domains and the degree of limitation in each presented by

---

[24]       20 C.F.R. § 416.972.

-13-

T.G.'s symptoms, objective medical evidence and other evidence, including opinion evidence.    He additionally had the benefit of a Childhood Disability Evaluation Form, completed by consultants Drs. Henry Simon and James Murtagh in June, 2008, which form addresses the required assessment of functional equivalence. [Tr. 154-159] In considering the six domain evaluations, the consultants found no limitations in any domain and found that T.G.'s medically determinable impairment or combination of impairments result in no more than minimal functional limitations. [Tr. 154] The report further notes evidence from medical records of T.G.'s history of asthma, without any indication of hospital admits due to asthma attacks and no indication that T.G. is on asthma medications. [Tr. 159]  The ALJ also made findings regarding each of the six functional equivalence domains: (1) He found that T.G. has no limitation in acquiring and using information.  She makes passing grades in regular classes at her school, and her only accommodation is seating near the blackboard. [Tr. 13-14] (2) He found that T.G. has no limitation in attending and completing tasks. [Tr. 14-15] (3) He found that T.G. has "less than marked limitation" in interacting and relating with others, supported by statements from the claimant mother regarding T.G.'s friendships, her prescription for a prosthetic lens to address teasing by other children, and records completed by the mother and medical professionals indicating that T.G. has adjusted well. [Tr. 15-16] (4) He found that

T.G. has "less than marked limitation" in moving about and manipulating objects, supported by her ability to participate in physical education at school and T.G.'s self-described participation in kickball. [Tr. 17] (5) He found that T.G. has "no limitation" in the ability to care for herself, and (6) he found that T.G. has "less than marked limitation" in health and physical well-being, supported by her history of stable/controlled asthma and her good adjustment to the loss of vision in her right eye.  He found only that T.G. does require regular monitoring of her condition. [Tr. 18]

On these findings,  the ALJ concluded that T.G. is not disabled as defined under the Social Security Act.  Substantial evidence supports that conclusion.  There is no medical evidence in the record of problems with T.G.'s left eye and, in fact, the latest eye examinations indicate that the child has 20/20 corrected vision in that eye. Nor is there medical evidence in the record to indicate that T.G.'s right eye blindness meets the criteria for statutory blindness under the Social Security regulations.[25] There is likewise no medical evidence announcing T.G. as disabled in any way.[26]

---

[25]     20 CFR 404, Subpt. P, App. 1, 2.00A.2., 2.02 and 2.03A.

[26]     *Vaughan v. Shalala*, 58 F.3d 129, 131(5th Cir. 1995)(ALJ's decision supported by fact that no physician who examined the plaintiff announced her disabled.)

-15-

The claimant argues that the ALJ should have sought objective evidence relative to T.G.'s limitations in th area of relating to others and moving about, self care and manipulating objects. [Rec. Doc. 12, p. 5] The claimant also urges that "[I]t would have been important that a psychological examination be performed to determine what effect monocular vision would have on T.G. [Rec. Doc. 12, p. 5] It is well settled that the ALJ has discretion to decide whether to require a claimant to undergo a consultative examination.[27]  When the ALJ is unable to make a disability determination based on the medical evidence in the record, and the claimant has presented evidence sufficient to raise a suspicion concerning a non-exertional impairment,[28] the ALJ is required to order a consultative evaluation.[29]  Thus, when "the existing medical evidence is inadequate to make an informed disability determination, the Commissioner has a duty to develop the record by recontacting a claimant's medical sources or by referring the claimant for a consulting exam."[30]   In the instant case, the record establishes that the ALJ did seek a consulting exam from Dr. Robert Casanova relative to T.G.'s monocular vision. The results of that

---

[27]   *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987).

[28]   *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987).

[29]   *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977).

[30]   *Jessee v. Barnhart*, 419 F.Supp.2d 919, 933-34 (S.D. Tex. 2006).

examination, conducted on July 27, 2009, indicated that T.G. had 20/20 corrected vision in her left eye; her prognosis was considered stable, and she was able to read fine and large print, handle and work with large objects, drive an automobile, avoid objects in her pathway, and avoid people approaching from her side. [Tr. 213] None of T.G.'s physicians recommended psychological evaluation or treatment, and there is no history of such treatment during the child's life.  Based on the representations by T.G.'s mother and the absence of any indication in the record to raise a suspicion of psychological problems warranting evaluation or treatment, no further consulting examination was necessary.

When a "claimant does not provide sufficient evidence, the ALJ must make a decision based on the available evidence."[31]  In this case, the ALJ made a disability determination based on the considerable evidence in the record.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be AFFIRMED and that the instant matter be DISMISSED WITH PREJUDICE.

---

[31]    *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).

-17-

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 5th day of March, 2012.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)